UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AMY S. RADFORD and
DERON J. PARKER,                                      CIVIL NO. 10-2942 (JRT/JSM)

       Plaintiffs,

v.                                                                    **REPORT AND RECOMMEDNATION**

JPMORGAN CHASE BANK, N.A,
CHASE HOME FINANCE LLC,

       Defendants.

The above matter came on before the undersigned upon defendants' Motion for Summary Judgment [Docket No. 20]. Plaintiffs appeared pro se. Aleava Rael Sayre, Esq. appeared on behalf of defendants.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2005, plaintiffs Amy S. Radford and Deron J. Parker executed a note in favor of Long Beach Mortgage Company ("Long Beach"), a former subsidiary of Washington Mutual Bank, F.A. ("Washington Mutual"), for the principal amount of $125,600 ("the Note"). See Affidavit of Stacey Smith in Support of Defendants' Motion for Summary Judgment ("Smith Aff."), Ex. A. As a part of this financing, the Note was secured by a mortgage dated July 8, 2005 to Long Beach (the "Mortgage") in the amount of $125,600. Id., Ex. B. On September 12, 2005, the Mortgage was recorded with the Hennepin County Recorder's Office as Document No. 8651185. Id. Under the

Note, plaintiffs were required to pay the principal and interest in monthly installments on the first day of every month beginning on September 1, 2005.  Id., Ex. A.

Plaintiffs defaulted under the terms of the Note and Mortgage in 2005.  Id., ¶ 4, Ex. C.  On February 20, 2007, plaintiffs entered into a Loan Modification Agreement with Washington Mutual ("the Modification"), where the modified principal balance was $136,225.17 and the new monthly obligation was $1,044.99.  Id., Ex. D, p. 3.  On March 20, 2007, the Modification was recorded with the Hennepin County Recorder's Office as Document No. 8952820.  Id., p. 1.  As a part of the Modification, the unpaid principal balance, interest and other costs in the amount of $10,911.06, was included in the modified principal balance.  Id., p. 3, ¶ 3.  Plaintiffs promised to make monthly payments in the amount of $1,044.99, beginning in April 1, 2007.  Id., ¶ 7.  In addition, the Modification provided as followed:

> 13.   **No Release**.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in Whole or in part of the Note and/or Security Instrument. Except as expressly provided in this Agreement, all of the terms, covenants agreements and the Note and Security Instrument will remain unchanged and the Parties will be bound by, and comply with, all of the terms and provisions of the instruments, as amended by this Agreement.
>
> 14.   **Warranties**.  Borrower does hereby state and warrant that the above described Note is valid and enforceable in all respects and is not subject to any claims, defenses or right of offset or credit except as herein specifically provided. Borrower does further hereby extend all liens and security interests on all of the Subject Property and any other rights and interests which now or hereafter secure said Note until said Note as modified hereby has been fully paid, and agree that this modification and extension will in no manner impair the Note or any of the liens and security interests securing the same and that all of the liens, equities, rights, remedies and security interests securing said Note shall remain in full force and effect and shall not in any manner be waived. Borrower further agrees that all of the terms, covenants, warranties and provisions contained in the original Note and

> Security Instrument are now and shall be and remain in full
> force and effect as therein written, except as otherwise
> expressly provided herein, until the Note is paid in full and all
> other obligations under the Security Instrument are fulfilled.

Id., ¶¶ 13, 14 (emphasis in original).

On September 25, 2008, JPMorgan Chase Bank, N.A. ("JP Morgan") became the owner of the loans and loan commitments held by Washington Mutual. Id., Ex. E (Affidavit of the Federal Deposit Insurance Corporation).

On October 14, 2009, plaintiff sent a letter, entitled "RESPA[1] QUALIFIED WRITTEN REQUEST" ("QWR"), to defendant Chase Home Finance, L.L.C., ("Chase"), the servicer of the loan. Id., Ex. F. The letter stated that plaintiffs were writing to complain about "accounting and servicing of my mortgage and my need for understanding and clarification of various charges, credits, debits, transactions, actions, payments, analyses, and records related to the servicing of my loan from its inception to present date." Id., p. 1. Plaintiffs requested that Chase provide them with several documents to assist them with conducting an audit and also asked for responses to several questions to determine: the servicing relationship Chase had to the loan; whether the promissory note had been securitized; any trusts to which the Note had been assigned; any guarantees pertaining to the loan; whether the original promissory note reflected the chain of title from one interest to another; the quality control measures taken as to the loan; whether the loan had ever been classified as a scratch and dent loan; whether they would receive the original promissory note once the Note was paid; the fees assessed for property inspections or appraisals since the inception of the loan; the name and date of the pooling and servicing agreements; whether there had been

---

[1]      RESPA refers to the Real Estate Settlement Procedures Act.

any unapplied account transactions on plaintiffs' account; and information bearing on late fees.  Id., pp. 2-5.

On October 23, 2009, Chase sent plaintiffs a letter acknowledging receipt of their letter, and on December 2, 2009, it conducted research concerning plaintiffs' loan.  Id., Exs. G, H.  On December 2, 2009, Chase responded to plaintiffs' letter, and enclosed copies of the Note, Security Instrument, HUD-1 Settlement, Truth in Lending statement, Application, Appraisal, and Loan History.  Id., Ex. I.  As to plaintiffs' questions, the letter referred plaintiffs to the attached loan history and the public record.  Id.  The letter response also provided, "[a]ny documents or information requested but not included with this package are unavailable or considered proprietary, and will not be provided." Id.  According to defendants, plaintiffs never contacted them again regarding Chase's response to their October 14, 2009 QWR.   Smith Aff., ¶ 11.

Plaintiffs did not make the payment due and owing in September 2007 and have remained in default since that time.  Id., ¶ 4, Ex. C.  Chase has sent plaintiffs numerous notices of its intent to foreclose based on plaintiffs' failure to make payments when due. Id., ¶ 12, Ex. J.  The notices apprised plaintiffs that in "accordance with our servicing requirements, periodic property inspections will be requested unless payment is received.  You will be billed for each property inspection ordered."  Id.

On or about September 24, 2009, JPMorgan issued a Notice of Mortgage Foreclosure, which scheduled the foreclosure sale of the property for December 1, 2009.  Id., Ex. K.  The foreclosure sale was delayed until February 2, 2010, to allow Chase to respond to plaintiffs' QWR.   Id., Ex. L.  At plaintiffs' request, the foreclosure sale was again rescheduled for March 9, 2010.  Id., Ex. M.  On February 22, 2010, plaintiffs recorded in the Hennepin County Recorder's Office an Affidavit of

Postponement as Document No. A9483089, in which plaintiffs "elected to shorten [their] redemption period from any foreclosure sale of the Property to five weeks in exchange for the postponement of the foreclosure sale for five months." Id., Ex. N.  In response to this Affidavit, Chase postponed the foreclosure proceedings until April 9, 2010 and then subsequently canceled the foreclosure proceedings.  Id., ¶¶ 16, 17.  Defendants have represented that they have not recommenced the foreclosure proceedings.  Id., ¶ 17.

On July 7, 2010, plaintiffs filed a Complaint alleging the following:  In October 2009, plaintiffs sent a QWR to defendants as a dispute of the debt and a request for a validation of debt alleged to be owed on their home. See Complaint [Docket No. 1], ¶ 7. In December 2009, defendants sent an incomplete response to the QWR in that they failed to provide all documents requested for an audit and they failed to disclose to plaintiffs the identity of the owner and actual lender of the mortgage note, in violation of RESPA § 2605(1).  Id., ¶¶ 7-9.  While the Mortgage allows for inspections of the property with prior notice, the loan history provided as part of the QWR revealed that two property inspections were performed without notice: one on February 14, 2007, and another on August 1, 2008, both at a charge to plaintiffs.  Id., ¶ 10.  The loan history also indicated that in December 2009 the loan had been a "GMLA Charge off" for more than two years and that their demand for an accounting as part of the QWR had not been answered.  Id., ¶ 11.  Thus, the debt at issue has already been charged off and the defendants have no financial basis nor legal right to foreclosure on the property.  Id.

Based on these allegations, plaintiffs claimed that their rights under the Fourth Amendment of the United States Constitution have been violated and that to continue with the foreclosure sale on the plaintiffs' property would amount to an unreasonable seizure of their property.  Id.  Additionally, because of the incomplete response by

defendants to plaintiffs' QWR, as well as the revelation of facts indicating violations and a breach of contract, plaintiffs requested that the non-judicial foreclosure process on behalf of JPMorgan be declared null and void and that the scheduled August 13, 2010, foreclosure sale be declared a violation of plaintiffs' Fifth Amendment rights. Id., ¶ 12. Plaintiffs claimed they have experienced emotional distress due to defendants' actions as a result of a severe loss of equity in their Minneapolis home and defendants' claim that they owe $164,480.13. Id., ¶ 13. Plaintiffs alleged that defendants have engaged in a pattern of non-disclosure, citing to a website showing that there were over 11,000 complaints against defendants. Id., ¶ 14, Ex. F.

As relief, plaintiffs requested monetary damages in excess of $50,000 for defendants' alleged RESPA violation for the non-disclosure of the information requested in the QWR; a declaration that any sheriff's sale of plaintiffs' property is null and void; injunctive relief preventing any future action or sale of plaintiffs' property; and punitive damages for the RESPA violation. Id., p. 4.

The present matter comes before the Court on defendants' motion for summary judgment.

## II.   STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"

DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).   If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995).  "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial."  Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted); see also Fed. R. Civ. P. 56(c).   The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy."  Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

When deciding a motion for summary judgment, a court can only consider admissible evidence.  See Henthorn v. Capitol Commc'ns, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004); see also Stuart v. Gen'l Motors Corp., 217 F.3d 621, 636 n. 20 (8th Cir. 2000) ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition. . . .").

III.    **ANALYSIS**

A.    **RESPA Claim**

Defendants argued that summary judgment should be granted on plaintiffs' RESPA claim on the basis that they fully responded to plaintiffs' QWR; plaintiffs have not alleged or suffered any harm caused by the alleged failure to respond adequately; and plaintiffs have failed to plead or show a pattern of noncompliance. See Defendants' Memorandum of Law in Support of their Motion for Summary Judgment ("Defs.' Mem."), pp. 10-14.  Plaintiffs responded that defendants failed to provide all of the documents necessary to validate the loan; failed to identify the amount owing on the loan; failed to identify the current holder of the Mortgage and Note; and failed in its obligation to validate the debt.  See Plaintiffs' Opposition to Summary Judgment ("Pls.' Opp. Mem.") pp. 6-7.

Pursuant to 12 U.S.C. § 2605(e), a loan servicer must first respond to a "qualified written request from the borrower . . . for information <u>relating to the servicing[2] of such loan</u>" by providing a written acknowledgment of the receipt of such a request. 12 U.S.C. § 2605(e)(1)(A) (emphasis added). The loan servicer must then take one of three specified actions:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or

---

[2]    "Servicing" under RESPA is defined as:

> [R]eceiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2).

Plaintiffs' RESPA claim can be divided into three separate categories of complaints regarding Chase's response to their QWR: (1) the responses failed to identify the owner and actual lender of the mortgage note, in violation of RESPA § 2605(1); (2) defendants failed to provide plaintiffs with sufficient documents to audit the loan or validate the loan; and (3) defendants failed to identify the amount owing on the loan.  Pls.' Opp. Mem., p. 6.

Requests for information pertaining to the identity of a note holder or mortgage holder do not relate to servicing the loan and thus failure to provide such information is not a violation of RESPA.  See Kelly v. Fairon & Assocs., Civil No. 10–3228 (DSD/TNL), --- F. Supp.2d ----, 2012 WL 361697 at *2 (D. Minn. Feb. 03, 2012) ("Requests for

information pertaining to the identity of a note holder or master servicer do not relate to servicing.").  Other courts within this district have also concluded that questions seeking information unrelated to errors in the loan account or the servicing of the loan did not fall within § 2605 of RESPA:

> Plaintiffs did not identify any purported errors in Plaintiffs' account or request the correction of the same. Nor did they ask questions related to Beneficial's servicing of the loan or identify any errors in loan servicing. Instead, the notice identified a laundry list of requests for documents and information, most of which are completely unrelated to the servicing of the loan and lie outside the scope of RESPA. For example, Plaintiffs sought information related to the loan's closing and origination, loan ownership and the contractual relationships between Beneficial and other companies, unrelated general correspondence, the source of funds used by Beneficial to purchase promissory notes or similar instruments, payments made or received by Beneficial to fund the loan, information regarding broker's services, and documents related to SEC rules.

 Dietz v. Beneficial Loan & Thrift Co., No. 10-3752, 2011 WL 2412738 at *4 (D. Minn. June 10, 2011); see also DeVary v. Countrywide Home Loans, Inc., 701 F. Supp.2d 1096, 1108 (D. Minn. 2010) (concluding that information regarding the "ownership of the loan" did not appear to relate to servicing).  Because requests for information pertaining to the identity the current holder of the Mortgage and Note are not questions relating to servicing, this Court finds that defendants did not violate RESPA by failing to provide this information to plaintiffs.

Similarly, to the extent that plaintiffs are asserting that defendants failed to provide information regarding the validity of the loan (e.g., whether there is an even a valid loan in place), such information relates to contractual obligations and not to the servicing of the loan.  See, e.g., Junod v. Dream House Mortg. Co., No. CV 11–7035–ODW (VBKx), 2012 WL 94355 at *3 (C.D. Cal. Jan. 5, 2012) (citing Consumer Solutions

REO, LLC v. Hillery, 658 F. Supp.2d 1002, 1014 (N.D. Cal. 2009)) ("That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan"); MorEquity, Inc. v. Naeem, 118 F. Supp.2d 885, 901 (N.D. Ill. 2000) (dismissing a RESPA claim on the basis that "[a]ccording to the allegations . . . , the letter sought information about the validity of the loan and mortgage documents, but made no inquiry as to the status of the [ ] account balance.").  Thus, no violation of RESPA can be asserted for a failure to provide such information.

As to plaintiffs' claim that defendants failed to provide them with sufficient documents to "audit" the loan, this Court cannot discern, and plaintiffs have not explained to this Court, what this category of documents entails, what documents have not been produced by defendants that relate to the "audit," or how such documents relate to the servicing of the loan.  Therefore, the Court cannot find that defendants violated RESPA for failing to provide documents necessary to "audit" the loan.

It is true that plaintiffs listed in their QWR the following "DOCUMENTS NEEDED TO CONDUCT AUDIT":

- All "master" transaction registers/ledgers of my loan in your servicing files or backup files with you or any sub-servicer, including but not limited to the Fidelity mortgage servicing system, FiServ or any mortgage servicing system you use. Please provide all information residing in any data field in the system or any component that supports the system that deals with any of the questions listed below. (no screen or partial dumps or spreadsheets please).

- Also, please provide and include all descriptions and legends of all codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts I intend to retain to audit and review my mortgage account may properly conduct their work.

- A certified copy of the front and back portion of my promissory note as it exists today along with all endorsements, affixed or un-affixed allonges, and assignments whether recorded or not.

- A certified copy of the front and back portion of my mortgage as it exists today along with all assignments whether recorded or not.

- Cancelled checks, wire transmittals or other evidence of payment for each assignment of my promissory note.

- All executed, recordable and "non-recordable" assignments associated with my loan including, but not limited to assignments, transfers, allonges, or other documents evidencing a transfer, sale or assignment of my mortgage, deed of trust, promissory note or other document that secures payment by me to my obligation in this account from the inception of my loan to the present date.

- All records, electronic or otherwise, of assignments of my mortgage, promissory note, or servicing rights to my mortgage.

- All escrow analyses conducted on my account from the inception of my loan until the date of this letter.

Smith Aff., Ex. F, p. 2.  However, none of these documents pertain to the servicing of

the loan, with the exception of documents bearing on the funding of and payments from

escrow accounts.   While managing escrow accounts could fall within the gambit of

servicing, (see § 2605(i)(3) ("receiving any scheduled periodic payments from a

borrower pursuant to the terms of any loan, including amounts for escrow accounts"),

plaintiffs have not alleged that there has been any violation involving their escrow

account, nor have they asserted or provided evidence that the amounts placed in

escrow was not addressed in the loan history.

Plaintiffs' third assertion – that defendants failed to identify the amount owing on

the loan (see Pls.' Opp. Mem., p. 6) – was never raised in the Complaint.  Moreover,

plaintiffs never stated in the QWR that their account was in error or asked for the current amount owing on the loan.  See Smith Aff., Ex. F.  Rather, plaintiffs only indicated that, "[d]ue to the recent mortgage market meltdown and your involvement in this market, I am concerned that my loan has not been properly credited, amortized, calculated and serviced properly" and a "worry" due to the problems in the mortgage market, that "the amounts you claimed owed by me are incorrect" (Smith Aff., Ex. F, p. 1).  See Dietz, 2011 WL 2412738 at *4 (granting a motion to dismiss a RESPA claim on the basis that QWR did not identify any purported errors in their account).   In any event, the undisputed evidence is that Chase provided to plaintiffs a copy of the loan history as part of its response, which set out the amount owing on the loan.  See Smith Aff., Ex. I.

Separate from the above deficiencies, even if defendants did not properly respond to the QWR, summary judgment is still appropriate because plaintiffs failed to submit any evidence that they suffered some actual damage because of the alleged RESPA violation.  "A RESPA plaintiff must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation." Hintz v. JPMorgan Chase Bank, N.A., Civil No. 10-2825 (MJD/JJK), 2011 WL 579339 at *9 (D. Minn. Feb. 8, 2011) (citations and marks omitted).  Indeed, damages relating to an individual plaintiff's damages for violations of "RESPA's QWR requirements are limited to 'actual damages' and, 'in the case of a pattern or practice of noncompliance,' up to $1,000 in statutory damages." Kelly, 2012 WL 361697 at *3 (quoting Hintz, 2011 WL 579339 at *9 (quoting 12 U.S.C. § 2605(f)(1)) (emphasis added).[3]

---

[3]        12 U.S.C. § 2605(f) provides:

          Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

In this case, plaintiffs alleged that they suffered damages in excess of $50,000 "for emotional distress connected to RESPA violations, for non-disclosure of information to the Plaintiff's QWR."   Complaint, p. 4, ¶ 1.   In their memorandum in opposition to defendants' motion for summary judgment, plaintiffs asserted that they seek $111,837 in emotional distress because defendants did not validate the amount owed in violation of RESPA.   <u>See</u> Pls.' Opp. Mem., p. 9.   Even assuming that "emotional distress" damages are "actual damages" for the purposes of RESPA, plaintiffs' claim fails because they have not provided this Court with any competent evidence showing that they have suffered from emotional distress from defendants' QWR responses, or lack thereof.   Conclusory arguments, without evidentiary support, do not create a factual dispute that can defeat a motion for summary judgment.   <u>See</u> <u>Ramirez v. Harmon</u>, No. 03–5284 (JRT/AJB), 2006 WL 2583106 at *2 (D. Minn. Sept. 1, 2006) (stating that "the pro se plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions") (citing <u>Dunavant v. Moore</u>, 907 F.2d 77, 80 (8th Cir. 1990)).

As for any suggestion that defendants have engaged in a pattern or practice of noncompliance, plaintiffs submitted an internet printout listing links to articles dealing with alleged malfeasance, and an article stating that the Federal Reserve would be

---

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of—

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

fining a number of banks (including JPMorgan Chase & Co) for unspecified misconduct. See Complaint, ¶ 14; Ex. F [Docket No. 1-2]; Pls.' Opp. Mem., Ex. I.  However, none of this purported "evidence" dealt with responding to QWRs.  Consequently, this "claim" cannot survive summary judgment.  See Dietz, 2011 WL 2412738 at *5 n.4 ("In their Second Amended Complaint, Plaintiffs allege that "Defendants have willfully engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605." (Second Am. Compl. ¶ 59.) RESPA does allow for a civil penalty of $1,000 "in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B). However, Plaintiffs' allegations regarding a pattern or practice are wholly conclusory and insufficient to state a cause of action.").

For all the reasons stated above, there are no material facts at issue and defendants' motion for summary judgment as to plaintiffs' RESPA claim should be granted.

### B.   Fourth and Fifth Amendment Claims

The allegations in the Complaint pertaining to plaintiffs' Fourth and Fifth Amendment claims under the Constitution are that because the debt at issue has already been charged off and defendants have no financial basis or legal right to foreclose on the property, any foreclosure sale on the property would constitute a unreasonable seizure under the Fourth Amendment and any foreclosure would amount to a violation of plaintiffs' Fifth Amendment rights. Id., ¶ 12.

State actors are precluded from depriving "any citizen of the United States or other person within the jurisdiction thereof . . . of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  In order to be deemed a state actor, the action of the private actor must be "'fairly attributable to

the State,' that is, in this context, that 'the party charged with the deprivation [was] a person who may fairly be said to be a state actor.'"  Nichols v. Metropolitan Ctr. for Indep. Living, Inc., 50 F.3d 514, 517 (8th Cir. 1995) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)) (citation omitted).  Plaintiffs did not allege in their Complaint that defendants were state actors or even that a state actor was involved with the foreclosure process.

In their opposition, plaintiffs intimated there was state action based on the fact that the Hennepin County Sheriff's Department served the notices of the foreclosure sale on their property.[4]  See Pls.'Opp. Mem., p. 9.  However, involvement of the sheriff in foreclosure proceedings does not transform the defendants, as private financial institutions, into state actors for the purpose of allowing plaintiffs to bring claims of constitutional violations against them.  See Mabry v. Ameriquest Mortg. Co., No. 09–12154, 2011 WL 3918581 at *5 (E.D. Mich. Aug. 12, 2011) ("despite the existence of a statute to regulate foreclosure by advertisement in Michigan, and the involvement of the sheriff and register of deeds in the procedure . . . no state action existed for Fourteenth Amendment purposes. To the extent that Plaintiff attempts to implicate present Defendants in the foreclosure proceedings, due process claims must be dismissed.") (marks and citations omitted).  Therefore, defendants' motion for summary judgment as it relates to plaintiffs' Fourth and Fifth Amendment claims should be granted.

### C.  Breach of Contract and Emotional Distress

In light of this Court's recommendation that all of plaintiffs' federal claims be dismissed, all claims conferring federal question jurisdiction are gone. Consequently, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental

---

[4]     Plaintiffs acknowledged that the foreclosure sale on the property has been cancelled.  See Pl.'s Mem., p. 9.

jurisdiction over plaintiffs' remaining state claims (breach of contract and a claim for emotional distress).  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("When federal claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction ....") (citation and marks omitted); Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004); Russell v. Hennepin County, No. 03-4889 (PAM/RLE), 2004 WL 2370681 at *3 (D. Minn. Oct. 08, 2004) (citing 28 U.S.C. § 1367(c)(3)).  Plaintiffs' state law claims should be dismissed without prejudice.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.     Defendants' Motion for Summary Judgment [Docket No. 20] be **GRANTED**.

2.     The RESPA and Fourth and Fifth Amendment claims in plaintiffs' Complaint should be **DISMISSED WITH PREJUDICE**.

3.     The breach of contract and emotional distress claims in plaintiffs' Complaint should be **DISMISSED WITHOUT PREJUDICE**.


Dated:       June 7, 2012

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## <u>NOTICE</u>

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 21, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **June 21, 2012**.